IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **BRIAN DAVID BOWERS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00072 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff. Nora Koch, Acting Regional Chief Counsel, Region III, Tara A. Czekaj, Assistant Regional Counsel, Alexander L. Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Brian David Bowers filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-433

(West 2011) and 1381-1383f (West 2012). Jurisdiction of this court exists under 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Bowers filed his application for benefits on March 9, 2009, alleging disability beginning October 20, 2006 due to chronic lumbar pain, degenerative joint disease, hypertension, hepatitis C, anxiety and depression. His claims were denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") on May 31, 2011. Bowers was represented by counsel and testified. A vocational expert also testified. The ALJ issued her opinion denying Bowers' claims on June 13, 2011. The Social Security Administration's Appeals Council denied Bowers' request for review and the ALJ's decision became the final decision of the Commissioner. Bowers then filed a complaint before this court seeking judicial review of the ALJ's decision.

The parties have filed cross motions for summary judgment, which have been briefed and orally argued. The case is ripe for decision.

II

The issue before the court is Bowers' argument that the ALJ erred when she gave no weight to the assessment of Bowers' ability to do work-related activities (mental) completed by Evelyn Hamilton, L.P.C. The court's review of the facts will, therefore, be limited to those related to Bowers' mental status.

Bowers was 50 years old at the time of the ALJ's decision, making him an individual closely approaching advanced age. 20 C.F.R. §§ 404.1563, 416.963 (2011). He has a high school education. His previous relevant work was as a laminator. Bowers claims he was terminated from his last job in October 2006 because of excessive absenteeism.

Bowers was examined by William Humphries, M.D., in June 2009 for the chief complaint of lower back pain. The mental status examination indicated that Bowers was alert and oriented to three spheres. His behavior was appropriate and his thought and idea content were within normal limits. His memory was intact and his intelligence was within normal range. His affect and grooming were appropriate.

In July 2009, Richard J. Milan, Ph.D., reviewed Bowers' file and determined that any mental impairment was non-severe.

In August 2009, Bowers sought treatment at Stone Mountain Health Services. He complained of various ailments, including depression. Uzoma Obuekwe, M.D., diagnosed depression and prescribed Zoloft. At his follow-up appointment in September 2009, Bowers reported that Zoloft had not helped his depression. Dr. Obuekwe increased his prescription. In October 2009, Bowers reported that his depression was about the same. He said that he no longer had suicidal ideation but did not have enough motivation to do his usual activities such

as golf and fishing. Dr. Obuekwe found Bowers to be mildly depressed and again increased his Zoloft prescription. In December 2009, Bowers reported that his depression had improved "a little." (R. at 431.) Dr. Obuekwe maintained Bowers' Zoloft medication and encouraged him to keep his psychiatric counseling appointment.

In November 2009, Howard S. Leizer, Ph.D., reviewed Bowers' medical record and concluded that any mental impairment was non-severe.

On February 9, 2010, Bowers attended a behavioral health consultation with Evelyn Hamilton, a licensed professional counselor. Bowers explained that he was upset by receiving a diagnosis of Hepatitis C and possible cirrhosis. Hamilton observed that Bowers was alert and oriented times three. She noted that he appeared "increasingly more positively focused" and was well-motivated for therapy. (R. at 416.) She saw that his mood was improved and that he was "obviously pleased about being able to report spending more time [with his] son." (*Id.*) At his February 16, 2010, appointment with Hamilton, Bowers reported increased stress related to caring for his mother. Hamilton observed that Bowers' mood and affect were appropriate and that Bowers was "usual active conversationalist." (R. at 415.)

At his March 2, 2010 appointment, Bowers reported that he was doing ok. Hamilton noted that he appeared mildly anxious but that he always appeared to feel

-4-

better after talking. On March 9, Bowers reported that he was still living in his mother's home and feeling tied with her but Hamilton observed his mood and affect were much improved, mostly due to the spring-like weather. Bowers discussed working on his winter-damaged driveway and going fishing with his brother. However, he also reported increased panic attacks. On March 24, Bowers exhibited mild anxiety but reported he was doing better. Hamilton noted that Bowers was "generally stable and functional but continues to resist new/different people/places." (R. at 412.)

At his March 2010 appointment with Dr. Obuekwe, Bowers stated that his depression was controlled by Zoloft. Dr. Obuekwe continued Bowers' Zoloft prescription.

On April 6, 2010, in an appointment with Hamilton, Bowers was upbeat and "armed [with] many [positive] topics for discussion." (R. at 411.) On April 21, Bowers was pleased to be back in his own house after many months at his mother's caring for her. He was enjoying his time by himself and enjoying frequent fishing trips with his son. He voiced some anxiety about his cirrhosis but was "dealing [with] it." (R. at 410.)

In May, Bowers reported that he had had to move back in with his mother after she fell. He was displeased about this and felt manipulated. Later that month, Bowers reported a considerable increased in his day-to-day activities,

including planting a garden, fishing and re-connecting with a cousin. Bowers stated that he was enjoying this new level of activity but complained of sleep problems.

In June, Bowers reported continued sleep problems and racing thoughts that kept him from sleeping. Hamilton observed that Bowers was pleasant but with a somewhat negative affect/mood. Hamilton discussed positive thinking and relaxation techniques with him and Bowers' mood improved during the session. Hamilton changed her diagnosis to mood disorder, not otherwise specified.

In July, Bowers was pleasant, animated, and energetic and discussed his thinking about his behavior and its relationship to his life and change. At a later appointment, Hamilton observed that Bowers' mood had significantly improved over the past six months. In August, Bowers was calm and eager to report on "changes, new efforts at improvements in life." (R. at 401.) His mood and affect were appropriate and bright and he was relaxed and enjoying the interaction. Bowers reported feeling good about his progress but still limited by social anxiety.

In September, Bowers reported feeling moody and more frequent crying spells. He was pleasant but somewhat anxious and exhibiting less motivation, hopefulness, and energy. During the session, Bowers was able to reaffirm his positive focus. In October, Bowers presented as pleasant but "having some internal ambivalence around being OK [with] self." (R. at 398.) Hamilton

recommended Bowers expand his activities and social interaction. Later in October, Bowers reported that he was spending more time with his cousin and considering going out to a club with his brother. He was pleasant with a calm and stable mood and affect. He had no significant issues and complaints at that time. In November, Bowers was more focused on the negative and reported several instances of feeling unable to deal with crowds/public places.

In February 2011, Hamilton completed a mental medical assessment form at the request of Bowers' attorney. The form was co-signed by Dr. Obuekwe. Hamilton opined that Bowers had a fair or poor/no ability in nearly all areas of functioning due to persistent anxiety, poor concentration, and his seizure disorder.

Bowers next appointment was in March 2011. Hamilton found that despite his "level of constant [anxiety]," Bowers was relatively relaxed, spontaneous and goal-oriented. (R. at 477.) Hamilton recommended relaxation exercises and other coping skills to try to decrease Bowers' anxiety. In April, Bowers was still dealing with anxiety, but was more aware of the process for dealing with it. In May, Bowers had a generally positive focus.

At his administrative hearing on May 31, 2011, Bowers testified that he spent his time washing clothes, cleaning, mowing the lawn, shopping, paying bills, preparing simple meals, reading, watching television, and driving. Bowers testified that he had had depression since 2007. He stated that he was paranoid of

going out into crowds, had trouble with his memory and concentration, and had crying spells. He also said that he gets chest pains and has trouble sleeping.

The ALJ asked the vocational expert to consider the hypothetical of a person with Bowers' age, education, work experience, and certain other (mainly physical) additional limitations. The vocational expert identified the unskilled light work jobs of assembler, packer/bagger, and inspector/sorter. Bowers' attorney posed the hypothetical of an individual with Bowers' background and the additional limitations as outline by Hamilton's assessment. The vocational expert stated that those limitations were less than the minimum mental capacity required for substantial gainful work activity.

In her decision, the ALJ found that Bowers had the severe impairments of obesity, grade 1 spondylolisthesis and disc space narrowing at L5-S1, asthmatic bronchitis, hepatitis C and cirrhosis, fatty liver, and a history of seizures. The ALJ found that Bowers' medically determinable mental impairments of depression and anxiety, considered singly and in combination, did not cause more than minimal limitation and were, therefore, non-severe. The ALJ found that Bowers had no limitation in the daily living, social functioning, concentration, persistence or pace, and had no episodes of decompensation. She gave no weight to Hamilton's assessment of Bowers' mental ability to do work-related activities, finding that it

conflicted both with Hamilton's own treatment notes and with the other evidence in the record.

Bowers argues that the ALJ's decision is not supported by substantial evidence. For the reasons stated below, I disagree.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A); 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4) (2011). If it is determined at any point in the five-step analysis that

the claimant is not disabled, the inquiry immediately ceases. *Id.* The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Bowers' primary argument is that the ALJ erred in according no weight to Hamilton's assessment of his mental limitations. Had the ALJ accorded the

assessment the proper weight, Bowers argues, it would be clear that his mental impairments combined with his physical impairments render him disabled.

In according Hamilton's assessment no weight, the ALJ found that the assessment was "inconsistent with Ms. Hamilton's progress notes and the rest of the evidence in the file." (R. at 14.) The ALJ's determination was proper under the regulations and supported by the evidence. First, Hamilton is not an acceptable medical source whose opinion constitutes evidence establishing an impairment. 20 C.F.R. §§ 404.1513, 416.913 (2011); 20 C.F.R. §§ 404.1527(a)(2); 416.927(a)(2) (2011).

Secondly, the ALJ was entitled to accord Hamilton's opinion little weight because it lacked support in and was inconsistent with both Hamilton's own treatment notes and the record as a whole. 20 C.F.R. §§ 404.1527(d)(3-4); 416.927(d)(3-4) (2011). Hamilton's notes show an individual undoubtedly struggling with some depression but who consistently responds to both medication and therapy. Throughout her notes, there is essentially no indication that Bowers' depression has a significant effect on his day-to-day living. While Bowers does report some dips in mood, he socializes with family, fishes, cares for his mother, and gardens. Throughout treatment, he appeared pleasant and talkative and always behaved appropriately. In addition, Hamilton's treatment recommendations were conservative, consisting mostly of continued therapy sessions and recommendation

-11-

of relaxation techniques. This evidence simply does not support the extreme limitations outlined in her assessment.

The ALJ was also correct to note that Hamilton's assessment was not supported by and inconsistent with the rest of the evidence in the record. Bowers himself reported to Dr. Obuekwe that his depression was controlled by the Zoloft and Dr. Obuekwe agreed with this self-assessment. Two state agency psychologists opined that Bowers did not suffer from a severe mental impairment. Dr. Humphries also diagnosed no mental disorder and his mental examination showed no abnormalities. Hamilton's assessment simply is not supported by the evidence and the ALJ appropriately accorded it no weight.

Bowers makes two additional arguments dependent upon his primary argument that the ALJ erred in discounting Hamilton's assessment. First, Bowers argues that because the ALJ improperly discounted Hamilton's assessment, she did not properly consider the effect of the combination of impairments, including mental impairments, when concluding that Bowers was not disabled. Bowers also argues that the ALJ relied on an improper hypothetical in reaching her conclusion on residual functional capacity because the ALJ's hypothetical did not include the limitations from Hamilton's assessment. Because the ALJ properly discounted Hamilton's opinion and substantial evidence otherwise supports the ALJ's conclusion, these arguments are unavailing.

Case 1:11-cv-00072-JPJ-PMS   Document 17   Filed 05/23/12   Page 12 of 13   Pageid#: 550

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: May 23, 2012

/s/ James P. Jones
United States District Judge